E. A. SHRIVER, APPELLANT, V. IRA T. SIMS ET AL., APPELLEES.

FILED JUNE 12, 1934. No. 28839.

*J. E. Ray, Earl L. Hunter, Charles E. Bruckman* and *L. S. Dunmire,* for appellant.

*Herman G. Schroeder* and *Stiner & Boslaugh, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and THOMSEN, District Judge.

THOMSEN, District Judge.

This case presents the perplexing problem of where the loss shall fall among three innocent persons, the mortgagor and two mortgagees, for the defalcation of a loan broker. Briefly, the following essential facts are shown by the record.

The defendants Anderson are the owners of real estate in the city of Hastings. The plaintiff, Shriver, was the owner and holder of a mortgage for $7,500 on this property. John H. Uerling, of the loan firm of Hoeppner & Uerling, had been collecting the interest on this mortgage. Months before the mortgage matured, Uerling got the mortgage and note from Shriver for present collection of the principal. Uerling sold the note and mortgage to the defendants Turpit with the agreement that new papers which the Andersons would execute would be substituted for the old. Uerling then persuaded the Andersons to execute, without payment of commission, a present renewal of the mortgage. This was done by executing a new note and mortgage. Substitution of papers with the Turpits was then made. Uerling kept the old papers in his possession until pressed by the Andersons for a release. The old mortgage was not formally released, but Uerling marked the old papers and note "paid" and gave them to the Andersons. The Turpits paid Uerling $7,500, the full amount of the note and mortgage. Uerling, now insolvent, never paid the $7,500 to Shriver, and the latter brought these foreclosure proceedings on his mortgage. The district court held the old mortgage to have been satisfied by the $7,500 which Uerling received from the Turpits. The question presented is: Is the mortgage of Shriver a subsisting one?

All the details of dealings are unnecessary to a solution. However, the record leads to but one conclusion: That Uerling acted as agent for Shriver and no one else. With all the parties Uerling was the aggressor. In order to obtain the mortgage and note, he represented to Shriver that the Andersons wanted to pay. He induced the An-

dersons to renew the mortgage about five months before the mortgage was due, upon the representation that money might be hard to get on due date, and upon the false representation that an out-of-town person, whom the Andersons knew, would lend the money then. When the Andersons demurred and stated that they might want to pay the mortgage off at maturity, and that they did not want to pay any commission, he said they might pay it off any time and "Forget the commission. I am doing this for the other fellow." To the Turpits he represented that he had the Anderson loan for sale, and to the Turpits, having the money available for an investment, he delivered the Shriver papers with the agreement that a new loan would be made. So far as the record shows, it was only Shriver who had had prior dealings with Uerling. Uerling had collected the interest on this mortgage for Shriver and had collected the principal of other loans for him. The Andersons apparently met Uerling for the first time in a business way when the first interest coupon on the mortgage, which they had assumed and agreed to pay in purchasing the building, came due. On that occasion Uerling called upon them with the coupon. Thereafter they paid the interest at Uerling's office, Uerling always producing the coupons; occasionally Uerling would call at their place of business with the coupon when the interest was due. The Andersons paid no commission to Uerling; neither did the Turpits. To the Andersons, practically speaking, Uerling was a mere officious intermeddler; to the Turpits he was merely, as it were, a sales agent. As to the parties, not one was known to the other, not one inquired of the other. Probably no other result would have followed if the Turpits and the Andersons had communicated, but it is probable that Uerling's embezzlement could not have arisen if Shriver and the Andersons had communicated. But Shriver and the Andersons were strangers. It may have required some effort and time on the Andersons' part to locate the owner of the mortgage. The old mortgage had been made

by a former owner of the property, and the present plaintiff acquired the mortgage by assignment through the estate of his father. But the Andersons were active in seeking a release. So persistent were they that, when the effectiveness of excuses began to seem doubtful Uerling satisfied them by marking the old mortgage and note "paid" and giving them the papers.

Shriver could well have been more diligent. Although he occasionally inquired as to whether or not the Andersons had paid the mortgage, and even after the due date of the mortgage had passed, conditionally accepted from Uerling another mortgage, which turned out to be a second mortgage on other property for $3,500, which Uerling had falsely represented to be a first and a part of the Anderson settlement, he pursued the matter no further. He did not inquire of the Andersons at all, although he knew on what property his mortgage existed and must have known who occupied the building. As a matter of fact, he did nothing for his own protection after turning the papers over to Uerling. Although it was untrue that the Andersons wanted to pay the loan at the time that representation was made by Uerling to Shriver, yet Shriver did permit Uerling to take the papers for the very purpose of collecting the mortgage; in other words, Shriver authorized Uerling to get the money. The Andersons had no part in the false representation nor in inducing Shriver to part with the mortgage and note. The Andersons owed no duty to Shriver, since Uerling had possession of the papers for the authorized purpose of collection, and even if the assignment of the mortgage to the present plaintiff had been recorded, such record would not have been notice to the Andersons and obliged them to search the record for the present owner of the mortgage before making payment.

"In case of negotiable securities, the holder alone is the one *prima facie* entitled to receive payment." *Williams v. Keyes,* 90 Mich. 290, cited in *Stark v. Olsen,* 44 Neb. 646, at page 658. See, also, section 76-234, Comp. St.

1929, which provides that the recording of an assignment is not notice to mortgagor so as to invalidate payment made to mortgagee.

That Uerling was the agent of Shriver for the purpose of collecting the money is conceded by appellant in his brief. It is clear that Uerling was not the agent of either one of the others in any sense. However, the appellant contends that Uerling exceeded his authority as a collecting agent; that he sold the mortgage and note. The process followed, however, makes the result the test of whether or not it was a sale or collection. Uerling received $7,500 in his hands, the proceeds of the mortgage, the amount which Shriver expected to receive and Uerling was authorized to accept. While he had the money, he recovered and held in his possession the old note and mortgage. The latter papers he turned over to the Andersons; impliedly and necessarily authorized to do so in the process of collection. We are aware of no implied limitation on the power of an agent as to the manner in which the money he is authorized to collect for his principal is to be obtained, if the agent does nothing to harm his principal or leave any character of liability on the latter, and the mortgage is extinguished by such transaction. His duty is to collect the money. Unless his express authority is limited, all lawful means of aiding the debtor in making payment is proper. If, eventually, the agent gets the money into his possession, leaving his principal unaffected by his negotiations, and the mortgage is extinguished, he is acting within the scope of his implied and actual authority and, so far as the debtor is concerned, the agent has completed his duties. That moment, then, the legal relationship of the debtor and principal ceases. In effect, the method followed by Uerling was no different from a situation in which the Andersons would have secured a lender who, in consideration of a new mortgage and new note, had paid them $7,500 and the Andersons in turn had paid that money to Uerling in consideration of the return of the old papers and the

satisfaction of the old mortgage. Though Shriver did not directly authorize Uerling to do what he did, yet Uerling collected the money, the thing he was authorized to do. A principal rarely directs all the details of a transaction; ordinarily, he is interested only in the results. An agent may be authorized to collect a debt but not to receive a check in payment, and yet, if he accepts a check and ultimately receives the face value of it in money, the principal is bound. See section 178, Restatement, Agency, and the Nebraska annotations to this section; *Lorton & Co. v. Russell & Holmes*, 27 Neb. 372; *Phoenix Ins. Co. v. Meier*, 28 Neb. 124.

"The rule stated in this section (178) includes the receipt of anything by the agent in substitution for money if the money due is actually received by the agent." Restatement, Agency, sec. 178-a. See, also, *Griffin v. Erskine*, 131 Ia. 444, 9 Ann. Cas. 1193, and last paragraph of annotations in 9 Ann. Cas. 1198; 2 C. J. 629, note 40.

Again, a third person owes no duty, when he pays money to an agent designated to receive it, to see that the money reaches the principal, if the third person is without notice of any improper purpose or intention on the part of the collecting agent. Restatement, Agency, sec. 165-d, and Neb. Ann. sec. 165; 2 C. J. 635.

Incidental to the right given to Uerling to collect the money was his implied authority to surrender to the Andersons the mortgage and notes, for "every delegation of authority carries with it implied authority to do all acts naturally and ordinarily done in such cases which are reasonably necessary and proper to be done in order to carry into effect the main authority conferred." Meecham, Agency (2d ed.) sec. 715. See 21 R. C. L. 853, sec. 33.

"If securities have been given by the debtor he is entitled to their return. If the debt is evidenced by a document, as in the case of a note or bond, the debtor is entitled to it." Restatement, Agency, sec. 72-g, Neb. Ann. sec. 72. See 2 C. J. 634; *Sprigg v. Beaman*, 6 La. 59; *Boyd v. Pape*, 2 Neb. (Unof.) 859.

"When the money for the payment of a note secured by mortgage has reached the hands of an agent authorized to collect it, the debt is paid, and the mortgagor is entitled to have the mortgage, given to secure the debt, canceled." *Boyd v. Pape, supra.*

The fact that the Andersons did not obtain a release of the mortgage, but merely a return of the mortgage papers, would not affect their rights in any way.

"The payment or satisfaction of the mortgage debt avoids the mortgage deed. * * * The failure to enter satisfaction upon the margin of the record may subject the mortgagee to penalties, but has no effect to keep the mortgage in existence." *McNair v. Picotte,* 33 Mo. 57. See, also, sections 76-229, 76-230, and 76-233, Comp. St. 1929.

A mortgage is a mere security. It has no efficacy if unaccompanied by a debt or obligation. The debt is the principal thing; the land the incident. *Davidson v. Cox,* 11 Neb. 250. See, also, 35 Cent. Dig., Mortgages, sec. 1; 16 Dec. Dig. (2d) Mortgages, sec. 1; *Duell v. Leslie,* 207 Mo. 658; *Donovan v. Boeck,* 217 Mo. 70; Jones, Mortgages (3d ed.) sec. 269. A mortgage is extinguished by the payment of the debt. The mortgagee has no property in such mortgage after such payment. *Carter v. Taylor,* 40 Tenn. 30; *Pease v. Pilot Knob Iron Co.,* 49 Mo. 124; *Hendricks v. Hess,* 112 Minn. 252; *Tobin v. Tobin,* 139 Wis. 494; *Curley v. Ford,* 168 Ill. App. 525; *Lydon v. Campbell,* 198 Mass. 29; id., 204 Mass. 580; *Doyon & Rayne Lumber Co. v. Nichols,* 196 Wis. 387. See, also, 35 Cent. Dig., Mortgages, sec. 852; 16 Dec. Dig. (2d) Mortgages, sec. 298 (4) ; 41 C. J. 785.

From the foregoing we reach the conclusion that, since Uerling was authorized to collect the debt and the process he followed resulted in enabling him to get into his possession the money which he was authorized to get, without any liability remaining for his principal, the mortgage of the appellant is paid and extinguished.

We note that in its decree the court did not pass upon the rights, if any, acquired by the appellant, under all the

conditions, in the Glantz mortgage of $3,500 which Uerling later gave to Shriver, leading the latter to believe that it was part of the Andersons' payment. In this the court was also right. It is a matter for Shriver's decision and involves rights or liabilities between other persons than the present litigants.

The conclusion we reach is the same as that of the district court, and its judgment and decree is in all respects

AFFIRMED.